UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
REUVEN LAPIN, individually and on behalf of all : **Case No. 07-cv-7829**
others similarly situated,                      : "ECF CASE"
                                                :
                        Plaintiff,              : **CLASS ACTION**
                                                : **COMPLAINT**
        -against-                               : **FOR VIOLATIONS**
                                                : **OF FEDERAL**
QIAO XING UNIVERSAL TELEPHONE, INC.,            : **SECURITIES LAW**
RUI LIN WU, and ALBERT LEUNG,                   :
                                                :
                        Defendants.             : **JURY TRIAL DEMANDED**
---------------------------------------------------------------X

Plaintiff Reuvin Lapin, by his attorneys, for his Class Action Complaint alleges:

**NATURE OF THE CASE**

1. This is a Class Action brought on behalf of plaintiff and all other persons or entities, except for defendants, who purchased or otherwise acquired Qiao Xing Universal Telephone Inc. ("Qiao Xing" or the "Company") securities on the NASDAQ, (the "Class") during the period June 30, 2004 through July 16, 2007, inclusive (the "Class Period").

2. This action, based on violations of section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), arises out of a series of false and misleading statements and omissions of material fact by defendants regarding Qiao Xing's financial results.

**JURISDICTION AND VENUE**

3. This action arises under sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a); and Rule 10b-5 promulgated pursuant to section 10(b) by the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.  The jurisdiction of this Court is based on section

1

27 of the Exchange Act, 15 U.S.C. § 78aa; and on sections 1331 and 1337(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1337(a).

4.      Venue is proper in this District under section 27 of the Exchange Act, 15 U.S.C. § 78aa, and section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b).  Qiao Xing trades on Nasdaq which is located in this district.

5.      In connection with the acts and conduct alleged herein, defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the United States mails and the facilities of the national securities exchanges.

## PARTIES

6.      Plaintiff Reuven Lapin, as set forth in the accompanying certification, incorporated by reference herein, purchased shares of Qiao Xing stock at artificially inflated prices during the Class Period as set forth in the accompanying certification and has been damaged thereby.

7.      Defendant Qiao Xing is a corporation organized under the laws of the British Virgin Islands with its principal executive offices located at Qiao Xing Science Industrial Park, Huizhon City, Guangdong, China.  Qiao Xing conducts business throughout the United States with retailers such as Wal-Mart.

8.      Defendant Rui Lin Wu was at all relevant times, Chairman and Chief Executive Officer of Qiao Xing.  Mr. Wu and his family own or control 26.7% of Qiao Xing's outstanding shares.

9.      Albert Leung was, at all relevant times, Qiao Xing's Chief Financial Officer.

10.     Defendants Wu and Leung are collectively referred to herein as the "Individual

Defendants."

11. The Individual Defendants, by reason of their management positions and membership and ownership of the Company's stock, were at all relevant times controlling persons of Qiao Xing within the meaning of section 20(a) of the Exchange Act. The Individual Defendants had the power and influence to cause Qiao Xing to engage in the unlawful acts and conduct alleged herein, and did exercise such power and influence.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the Class, consisting of all persons who purchased or otherwise acquired Qiao Xing securities between June 30, 2004 through July 16, 2007, inclusive. Excluded from the Class are defendants; members of the immediate families of the Individual Defendants; any entity in which any defendant has or had a controlling interest; and the legal representatives, heirs, successors, or assigns of any defendant.

13. During the Class Period, 29 million shares of common stock of Qiao Xing were outstanding in an actively-traded and efficient market in which millions of shares were traded. Qiao Xing common stock is traded on the NASDAQ under the symbol "XING." The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff, and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members of the Class. Record owners and members of the Class may be identified from records maintained by Qiao Xing or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

14.     Plaintiff's claims are typical of the claims of the members of the Class in that plaintiff and each Class member purchased securities of Qiao Xing during the Class Period and sustained injury as a result.

15.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

16.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to seek redress individually for the wrongs done to them. There will be no difficulty in the management of this action as a class action.

17.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class:

    a)     Whether the federal securities laws were violated by defendants' acts as alleged herein;

    b)     Whether defendants acted wilfully or recklessly in omitting to state and misrepresenting material facts; and

    c)     Whether the members of the Class have sustained damages, and if so what is the proper measure of damages.

**FACTS**

18.     Qiao Xing, founded in 1992 by defendant Wu, engages in the manufacture and distribution of telecommunications products in the People's Republic of China. Its products portfolio includes telecommunications terminals and related products, fixed wireless phones, VoIP telephones, advanced mobile phones, and PDAs and consumer electronic products, including MP3 players, cash registers, and set-top-box products. The company also designs GSM mobile phones. In addition, it engages in the research, development, and distribution of mobile phones; and the design and distribution of fixed line telephones, wireless telephones, and fax machines. Qiao Xing distributes its products through independent regional distributors, as well as after-sales service center, including wholesale agencies.

19.     On June 30, 2004, Qiao Xing filed its annual report with the SEC on Form 20-F for the year ended December 31, 2003. The annual report was signed by Defendant Wu and stated that for the year ended December 31, 2003, Xing reported net sales of Rmb 1.8 billion and a net loss of Rmb 7.73 million. The annual report stated that the consolidated financial statements were prepared in accordance with generally accepted accounting principles ("GAAP") in the United States of America.

20.     The 20-F for the year ended December 31, 2003 also included Sarbanes-Oxley certifications signed by Defendants Wu and Leung. In their respective certifications, the Individual Defendants represented, among other things, that "[b]ased on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made ... not misleading ..."

21.     On June 30, 2005, Qiao Xing issued a press release disclosing its financial results

for the year ending December 31, 2004. The Company reported net sales of Rmb 2.0 billion, and net income of Rmb 22.9 million. Defendant Wu stated "Net sales, income form [sic] operating and net income for 2004 were the highest since 2001 for the company."

22. Also on June 30, 2005, Qiao Xing filed its annual report with the SEC on Form 20-F for the year ending December 31, 2004. The annual report was signed by Defendant Wu, included the financial results set forth at ¶ 21 above, and stated that the consolidated financial statements were prepared in accordance with GAAP.

23. The annual report also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "[b]ased on my knowledge this report does not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . .."

24. On June 30, 2006, Qiao Xing filed its annual report with the SEC on Form 20-F for the year ended December 31, 2006. The Company reported net sales of Rmb 2.9 billion and net income of Rmb 249 million and stated that the consolidated financial statements were prepared in accordance with GAAP.

25. The annual report also included Sarbanes-Oxley certifications signed by the Individual Defendants. In their respective certifications, the Individual Defendants represented, among other things, that "[b]ased on my knowledge this report does not contain any untrue statements of material fact or omit to state a material fact necessary to make the statements made . . . not misleading . . .."

26. The statements referenced above in ¶¶19-25 were each materially false and

misleading when issued because they misrepresented and failed to disclose the following material adverse facts: (a) the Company's financial statements were not prepared in accordance with GAAP; (b) the Company's internal controls over financial reporting were materially defective, and (c) the Company's reported net income was materially overstated for the years ended December 31, 2004 and 2005 and the Company's reported net loss for the year ended December 31, 2003 was materially understated.

27.     On May 7, 2007, the Company issued a press release announcing that its HZQXCI subsidiary had launched 11 new phone models.  "With long experience of proven successes in developing sales of indoor phone sets in such markets, HZQXCI is expected to take advantage of the market potential by discerning the next generation of hot-selling mobile phones and by quick development of these products made possible by its strong capabilities in research and development."

28.     At the bottom of the May 7, 2007 press release, defendant Wu Rui Lin was quoted as saying, "owing to the involvement of the Company's management in the IPO of Qiao Xing's subsidiary, Qiao Xing Mobile Communication Co., Ltd., Qiao Xing's annual report for the fiscal year of 2006 will take a longer time to prepare than the investors would expect.  The Company remains committed to providing periodic financial information above and beyond what is required by the regulatory authorities.  In addition to semi-annual financial statements and full year annual reports, we also release of our own volition financial information relating to the first and the third quarters.  We target releasing the 2006 annual reports on Form 20-F in the middle of June, 2007 and financial information in respect of the first quarter of 2007 shortly afterwards.  When the specific release date is fixed, we will inform the public via a press release."

29. This press release was false and misleading because the Company knew it would have to restate several years' worth of financial statements, reveal that it had material weaknesses in internal control reveal and that the delay in revealing this information was necessary to enable the Company to consummate the QXMC IPO and raise needed capital in order to repay itself and DKR Management and to provide value to the Wu Rui Lin family's stake in QXMC.

30. On May 16, 2007, the Company issued a press release titled, "Qiao Xing Universal's Major Subsidiary Qiao Xing Mobile Reports First Quarter 2007 Financial Results." The release stated QXMC's revenues increased 44.1% and gross margin increased almost 6%, from 17.3% to 23.2%.

31. On June 20, 2007, before the market opened, the Company issued a press release announcing that, "company will need more time than previously estimated to prepare its annual report on Form 20-F for the fiscal year 2006. . . . extra work is required to coordinate between the different auditors, finance teams and audit committees of Qiao Xing Mobile Communication Co., Ltd. and the Company in connection with accounting matters during the preparation of the annual report." The price of Qiao Xing closed down $0.61 to $12.73 per share.

## THE TRUTH IS REVEALED

32. On July 17, 2007, before the market opened, the Company announced that "it filed with (the) SEC a Form 20-F to release its 2006 annual report and to restate its financial data for the years 2005, 2004 and 2003."

33. According to the press release issued by the Company:

> In connection with the audits of QXMC's financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that

8

>were not initially detected through the Company's internal control over financial reporting.
>
>As a result management has decided to restate the Company's consolidated financial statements for the years ended December 31, 2005, 2004 and 2003. In the restated financial statements, net income was reduced by Rmb 3.8 million in 2005, Rmb 21.5 million in 2004, and Rmb 16.3 million in 2003.
>
>The restatements are described at the beginning of the Form 20-F, in Item 5 Operating and Financial Review and Prospects of the Form 20-F and in Note 2 in the 2006 financial statements of Qiao Xing.
>
>In light of the restatements, the Company will need to improve certain aspects of its internal control over financial reporting, as described in Item 15 of the Form 20-F.

34. The Form 20-F filed by the Company with the SEC on July 17, 2007, revealed that the Company would restate its financial data for the three years ended December 31, 2005. The Form 20-F stated in relevant part, at Item 5:

>**RESTATEMENT OF CONSOLIDATED FINANCIAL STATEMENTS**
>
>The information contained in this MD&A has been adjusted to reflect the restatement of our previously issued financial statements and other financial information, as more fully described below, at the beginning of this Form 20-F and in Note 2 to our audited consolidated financial statements for the year ended December 31, 2006.
>
>Qiao Xing Mobile Communication Co., Ltd. (QXMC), a consolidated subsidiary of the Company, has recently become a U.S. listed company through an initial public offering, or IPO. In connection with the audits of QXMC's consolidated financial statements, certain misstatements for the years 2005, 2004 and 2003 were identified that were not initially detected through the Company's internal control over financial reporting.
>
>As a result, management has decided to restate the Company's

consolidated financial statements for the years ended December 31, 2005, 2004 and 2003 for the items discussed below. These items resulted in adjustments that reduced net income by Rmb 3,798,000 in 2005, Rmb 21,458,000 in 2004, and Rmb 16,287,000 in 2003.

(i) In QXMC's acquisition of its initial 65% interest in CECT in February 2003 and QXMC's acquisition of an additional 25% in CECT in July 2005, certain assumptions and certain valuation methods to process data provided by management were used by the valuation specialist engaged by the Company in determining the fair value adjustments assigned to the assets acquired and liabilities assumed. Management has reassessed the assumptions and the valuation methods used by the valuation specialist, and, as a result of this reassessment, the Company has restated its prior years' consolidated financial statements to reflect adjustments that have been made to the fair value of acquired assets (including equity investments and intangible assets) and the recognition of deferred tax assets and liabilities as of the date of the acquisitions and thereafter.

(i) As a result of an incorrect application of the provisions of EITF No. 99-19, "Reporting Revenue Gross as a Principal Versus Net as an Agent," to transactions in which a subsidiary of the Company collected and remitted principal or assuming the primary obligation in the relationship, the sales revenue and cost of goods sold during the years ended December 31, 2003, 2004 and 2005 were both overstated by equal amounts of Rmb 59.5 million, Rmb 263.1 million and Rmb 239.2 million, respectively. The overstatement, however, does not affect previously reported gross profit income from operations or net income and has not impact on cash flows or the consolidated balance sheets of previously issued financial statements.

(ii) Due to the incorrect recognition of losses in excess of the Group's original guaranteed return on its equity investment in a 49%-owned entity that the Group accounts for using the equity method, the equity in earnings of equity investees and the net income for the year ended December 31, 2004 were understated by Rmb 1,579,000 and Rmb 821,000, respectively. For the year ended December 31, 2005, the error resulted in an overstatement of the gain on disposal of equity investment by Rmb 1,579,000 and an overstatement of net income by Rmb 821,000. The impact of the error on the consolidated balance sheet as of December 31, 2004 was an

> understatement of total assets by Rmb 1,579,000, an overstatement of minority interests by Rmb 758,000 and an understatement of net assets by Rmb 821,000. The error has not impact on cash flows and the consolidated balance sheet as of December 31, 2005.

35. In response to these announcements, on July 17, 2007, the price of Qiao Xing stock declined from $13.97 per share, the price of Qiao Xing common stock at the close of trading on July 16, 2007, to close at $11.04 per share (a 21% drop), on extremely heavy trading volume.

36. During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Qiao Xing's securities and operated as a fraud or deceit on Class Period purchasers of Qiao Xing securities by misrepresenting the Company's operating condition and future business prospects. Defendants achieved this by misstating Qiao Xing's financial results, as detailed herein. Later, however, when defendants' prior misrepresentations were disclosed to the market, the price of Qiao Xing stock fell precipitously as the prior artificial inflation came out of Qiao Xing stock price. As a result of their purchases of Qiao Xing securities during the Class Period, plaintiff and other members of the Class suffered economic loss, *i.e.*, damages under the federal securities laws when they could not recover this artificial inflation.

### COUNT I

**PURSUANT TO SECTION 10(b)
OF THE EXCHANGE ACT AND
RULE 10b-5 PROMULGATED THEREUNDER
(Against All Defendants)**

37. Plaintiff incorporates by reference the allegations of paragraphs 1 through 36 as if fully set forth herein.

38. The reported financial results of Qiao Xing were materially false and misleading,

and defendants knew or were reckless in not knowing they were so, because Qiao Xing defendants prepared and participated in the issuance of the deceptive and materially false and misleading statements to the investing public which were not prepared in accordance with GAAP, as set forth above.

39.     Defendants employed devices, schemes, and artifices to defraud and engaged in acts, practices, and a course of conduct in an effort to maintain artificially high market prices for Qiao Xing securities in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

40.     As a result of the dissemination of the aforesaid false and misleading reports and releases, the market price of the securities of Qiao Xing throughout the Class Period was higher than it would have been had the true facts concerning the Company's financial condition been known by the market.

41.     In ignorance of the artificially high market prices of Qiao Xing's publicly traded securities, and relying upon the integrity of the market in which that stock was traded the New York Stock Exchange—Plaintiff and the other members of the Class acquired Qiao Xing securities during the Class Period.

42.     Had the market known of the true financial condition of Qiao Xing, which was falsely represented by defendants, plaintiff and the other members of the Class would not have purchased or otherwise acquired their Qiao Xing securities during the Class Period at artificially inflated prices at which they did and would not have suffered losses when the inflation was removed from the stock. Hence, plaintiff and the other members of the Class were damaged by defendants' violations of Section 10(b) and Rule 10b-5.

## COUNT II

### PURSUANT TO SECTION 20(a)
### OF THE EXCHANGE ACT
### (Against the Individual Defendants)

43. Plaintiff incorporates by reference the allegations of paragraphs 1 through 42 as if fully set forth herein.

44. This claim is asserted against the Individual Defendants and is based on section 20(a) of the Exchange Act. Individual Defendants acted as controlling persons of Qiao Xing within the meaning of section 20(a) of the Exchange Act. By reason of their positions as officers and directors of Qiao Xing and ownership of Qiao Xing stock, Individual Defendants had the power and authority to cause or to prevent the wrongful conduct of herein and did exercise such power and authority.

45. By reason of the foregoing, Individual Defendants are liable jointly and severally with and to the same extent as Qiao Xing for Qiao Xing's violations of section 10(b) of the Exchange Act and Rule 10b-5.

### PRAYER FOR RELIEF

**WHEREFORE,** plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(i) Declaring this action to be a proper plaintiff class action maintainable pursuant to rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure and declaring plaintiff to be a proper representative of the Class.

(ii) Awarding plaintiff and all of the other members of the Class Damages in an amount to be proven at trial, together with prejudgment interest

thereon;

(iii)    Awarding plaintiff the costs and expenses incurred in this action, including reasonable attorneys', accountants', and experts' fees; and

(iv)    Granting plaintiff and the other members of the Class such other and further relief as the Court deems just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated:  New York, New York
        September 7, 2007

**MURRAY, FRANK & SAILER LLP**

**By:** _____**S/**_____
    Marvin L. Frank (MF-1436)
275 Madison Avenue, 8th Floor
New York, NY 10016
Telephone:  (212) 682-1818
Facsimile:  (212) 682-1892

**GLANCY, BINKOW & GOLDBERG**
Michael Goldberg
1801 Avenue of the Stars
Los Angeles, CA
Telephone:  (310) 210-9150
Facsimile:  (310) 210-9160

Attorneys for Plaintiff